**THE ROSEN LAW FIRM, P.A.**
Joshua Baker, Esq. (BBO #695561)
Laurence M. Rosen, Esq. (*pro hac vice* to be submitted)
Phillip Kim, Esq. (*pro hac vice* to be submitted)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHNNY KARAM, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PEPGEN INC., JAMES MCARTHUR, and NOEL DONNELLY,<br><br>    Defendants. | **CASE No.: 1:25-CV-12007-ADB-MPK**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PAUL MCHALE TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |

Movant Paul McHale ("Movant") respectfully submits this memorandum of law in support of Movant's motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of securities of PepGen Inc. ("PepGen" or the "Company") between March 7, 2024 and March 3, 2025, both dates inclusive (the "Class Period"); and

(b)    approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.[1]

## INTRODUCTION AND BACKGROUND

On June 9, 2025, this action was commenced against the Company, James McArthur, and Noel Donnelly ("Defendants") for violations under the Exchange Act.

That same day, an early notice pursuant to the PSLRA was issued advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Declaration of Laurence M. Rosen ("Rosen Decl."), Ex. 1, filed herewith.

On July 16, 2025, this case was transferred from the United States District Court of the Eastern District of New York to the United States District Court for the District of Massachusetts.

Defendant PepGen is a clinical-stage biotechnology company that focuses on the development of oligonucleotide therapeutics for use in the treatment of severe neuromuscular and neurologic diseases. The complaint alleges that during the Class Period, Defendants made

---

[1] As stated in the Motion, given the nature of this type of motion, which can be brought by any investor irrespective of whether they have filed a complaint, counsel for Movant respectfully request leave from compliance with Local Civil Rule 7.1(a)(2) since it was unknown at the time of filing whether or which other investors intended to move this Court seeking similar relief.

materially false and/or misleading statements and/or failed to disclose that: (1) PGN-EDO51 was less effective and safe than Defendants had led investors to believe; (2) the CONNECT2 study was dangerous or otherwise deficient for purposes of U.S. Food and Drug Administration ("FDA") approval; (3) as a result of all the foregoing, PepGen was likely to halt the CONNECT2 study, and PGN-EDO51's clinical, regulatory, and commercial prospects were overstated; and (4) as a result, Defendants' public statements were materially false and misleading at all relevant times.

Then, on July 30, 2024, PepGen issued a press release announcing purported "positive clinical data from the first dose cohort (5 mg/kg) of PGN-EDO51" in its ongoing CONNECT1 study. Among other results, the Company reported that "PGN-EDO51 achieved a mean absolute dystrophin level of 0.61% of normal and a 0.26% change from baseline after 4 doses, measured at week 13 by Western blot analysis." However, as subsequently noted by a Stifel analyst, "the magnitude of dystrophin increase was below what [PepGen] anticipated, which is disappointing[.]" Likewise, a Leerink Partners analyst noted that the low dose missed PepGen's expectations of 1% or greater dystrophin expression.

On this news, PepGen's stock price fell $5.55 per share, or 32.69%, to close at $11.43 per share on July 31, 2024.

On December 16, 2024, PepGen issued a press release announcing that it had received a clinical hold notice from the FDA regarding an Investigational New Drug ("IND") application "to initiate the [CONNECT2] clinical trial in patients with [DMD]" in the U.S. Notably, the FDA's issuance of a clinical hold notice for the IND application indicated that the FDA had concerns regarding risks posed to patients in the CONNECT2 study and/or there were other deficiencies associated with the study.

On this news, PepGen's stock price fell $0.17 per share, or 3.63%, to close at $4.51 per share on December 16, 2024.

On January 29, 2025, PepGen issued a press release providing updates regarding safety concerns observed in the CONNECT1 study and the FDA's concerns regarding the CONNECT2 study.  With respect to the CONNECT1 study, the press release stated, inter alia, that "[d]osing of one of the[] . . . participants [in the 10 mg/kg cohort] was paused due to a reduction of his estimated glomerular filtration rate[.]" In addition, PepGen "ha[d] received communication from Health Canada . . . request[ing] additional information from the Company to address Health Canada's safety concerns before any further dose escalation or enrollment of any additional participants at the current dose levels." With respect to the CONNECT2 study, the same press release stated, in relevant part, that "[t]he Company is working with the FDA to address its questions regarding supportive data for the dosing levels planned for the patient population."

Following these disclosures, PepGen's stock price fell $0.40 per share, or 21.74%, to close at $1.44 per share on January 30, 2025.

On March 4, 2025, PepGen issued a press release "announc[ing] its voluntary decision to temporarily pause the [CONNECT2] study . . . until the Company can review results from the 10 mg/kg cohort in the ongoing [CONNECT1] study."

On this news, PepGen's stock price fell $0.53 per share, or 18.86%, to close at $2.28 per share on March 4, 2025.

Then, on May 28, 2025, PepGen issued a press release announcing that "PGNEDO51 did not achieve target dystrophin levels" in the CONNECT1 study and had chosen to discontinue development of its DMD programs. As a result of Defendants' wrongful acts and

omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.  Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $2,361.71 in connection with purchases of PepGen securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in the PepGen's securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.    Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.    Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those

7

asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in PepGen securities and is therefore, extremely motivated to pursue claims in this action.

Further, Movant lives in Connecticut and has been investing for over 40 years. He was a Navy Captain and manager of Nuclear Operations Training at an electric boat corporation. He has a BSME and MSME.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely movant.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against it that would render Movant inadequate to represent the Class.

## II.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including reviewing publicly available financial and other documents. Furthermore, the firm has an extensive history of bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in courts throughout the country. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests the Court issue an Order; (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: August 8, 2025                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        /s/ Joshua Baker
                                        Joshua Baker, Esq. (BBO #695561)

9

Laurence M. Rosen, Esq. (*pro hac vice* to be submitted)
Phillip Kim, Esq. (*pro hac vice* to be submitted)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

10

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PAUL MCHALE TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Joshua Baker