**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHNNY KARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPGEN INC., JAMES MCARTHUR, and NOEL DONNELLY,<br><br>Defendants. | No.: 1:25-cv-12007-ADB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JOHNNY KARAM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT ..............................................................................................................................5

      A.      KARAM SHOULD BE APPOINTED LEAD PLAINTIFF ...................................5

            1.      Karam Is Willing to Serve as Class Representative....................................6

            2.      Karam Has the "Largest Financial Interest" ..................................................7

            3.      Karam Otherwise Satisfies the Requirements of Rule 23...........................8

            4.      Karam Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .......................................................11

      B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................................11

CONCLUSION..........................................................................................................................13

i

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................10

*Arkansas Tchr. Ret. Sys. v. Insulet Corp.*,
    177 F. Supp. 3d 618 (D. Mass. 2016) ...................................................................7, 8

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994).........................................................................................9

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)..................................................................................9, 10

*Danis v. USN Communs., Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999)...............................................................................9

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996) ............................................................................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).....................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .........................7

*In re Comverse Technology, Inc. Securities Litigation*,
    No. 1:06-cv-01825 (E.D.N.Y.) ...............................................................................12

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) .....................................................................9, 10

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...............................................................................12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D. N.Y. 1998). ......................................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................9

*In re Petrobras Securities Litigation*,
    No. 14-cv-09662 (S.D.N.Y.)...................................................................................12

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y.2009) ..............................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................11

*Karam v. PepGen Inc. et al.*,
    No. 1:25-cv-03221 .............................................................................................................6

*Lax v. First Merchants Acceptance Corp.*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).........................................7, 8

*Leavitt v. Alnylam Pharms., Inc.*,
    378 F. Supp. 3d 60 (D. Mass. 2019) ...............................................................................7, 8

*Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*,
    52 F. Supp. 3d 337 (D. Mass. 2014) ..........................................................................9, 10, 11

*Luongo v. Desktop Metal, Inc.*,
    No. 1:21-CV-12099-IT, 2022 WL 2532498 (D. Mass. July 7, 2022) ...................................7, 8

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986)..........................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)...............................................................................12

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Exchange Act of 1934........................................................................1, 7, 9

**Rules**

Fed. R. Civ. P. 23....................................................................................... *passim*

Plaintiff Johnny Karam ("Karam") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Karam as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired PepGen Inc. ("PepGen" or the "Company") securities between March 7, 2024 and March 3, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act.  PepGen investors, including Karam, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused PepGen's share price to fall sharply, damaging Karam and other PepGen investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Karam purchased 4,000 shares of PepGen common stock, expended $15,600 on these purchases, retained 4,000 of his shares of PepGen common stock, and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $9,135 in connection with his Class Period transactions in PepGen securities. *See* Declaration of Emily C. Finestone in Support of Motion ("Finestone Decl."), Exhibit ("Ex.") A.

1

Accordingly, Karam believes that he has the largest financial interest in the relief sought in this Action. Beyond his significant financial interest, Karam also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Karam has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Karam respectfully requests that the Court enter an Order appointing Karam as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, PepGen is a clinical-stage biotechnology company that focuses on the development of oligonucleotide therapeutics for use in the treatment of severe neuromuscular and neurologic diseases. The Company's lead product candidate was PGN-EDO51, a proprietary enhanced delivery oligonucleotide peptide for the treatment of Duchenne muscular dystrophy ("DMD"), a genetic disorder characterized by progressive muscle degeneration and weakness.

DMD is caused by the mutation of the dystrophin gene, resulting in, *inter alia*, a limited production of the dystrophin protein, which in turn leads to DMD's clinical features. According to PepGen, "PGN-EDO51 [wa]s designed to skip exon 51 of the dystrophin transcript, an

2

established therapeutic target for approximately 13% of DMD patients, thereby . . . enabling the production of a truncated, yet functional dystrophin protein."

PepGen had been evaluating PGN-EDO51 as a treatment for DMD in two Phase 2 clinical trials—the CONNECT1-EDO51 ("CONNECT1") and CONNECT2-EDO51 ("CONNECT2") studies.

At all relevant times, Defendants touted PGN-EDO51's clinical, regulatory, and commercial prospects, including, *inter alia*, PGN-EDO51's ability to produce the dystrophin protein and the design, prospects, and results of the CONNECT1 and CONNECT2 studies.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) PGN-EDO51 was less effective and safe than Defendants had led investors to believe; (ii) the CONNECT2 study was dangerous or otherwise deficient for purposes of U.S. Food and Drug Administration ("FDA") approval; (iii) as a result of all the foregoing, PepGen was likely to halt the CONNECT2 study, and PGN-EDO51's clinical, regulatory, and commercial prospects were overstated; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

On July 30, 2024, PepGen issued a press release announcing purported "positive clinical data from the first dose cohort (5 mg/kg) of PGN-EDO51" in its ongoing CONNECT1 study. Among other results, the Company reported that "PGN-EDO51 achieved a mean absolute dystrophin level of 0.61% of normal and a 0.26% change from baseline after 4 doses, measured at week 13 by Western blot analysis." However, as subsequently noted by a Stifel analyst, "the magnitude of dystrophin increase was below what [PepGen] anticipated, which is

3

disappointing[.]"  Likewise, a Leerink Partners analyst noted that the low dose missed PepGen's expectations of 1% or greater dystrophin expression.

On this news, PepGen's stock price fell $5.55 per share, or 32.69%, to close at $11.43 per share on July 31, 2024.

On December 16, 2024, PepGen issued a press release announcing that it had received a clinical hold notice from the FDA regarding an Investigational New Drug ("IND") application "to initiate the [CONNECT2] clinical trial in patients with [DMD]" in the U.S.  Notably, the FDA's issuance of a clinical hold notice for the IND application indicated that the FDA had concerns regarding risks posed to patients in the CONNECT2 study and/or there were other deficiencies associated with the study.

On this news, PepGen's stock price fell $0.17 per share, or 3.63%, to close at $4.51 per share on December 16, 2024.

On January 29, 2025, PepGen issued a press release providing updates regarding safety concerns observed in the CONNECT1 study and the FDA's concerns regarding the CONNECT2 study.  With respect to the CONNECT1 study, the press release stated, *inter alia*, that "[d]osing of one of the[] . . . participants [in the 10 mg/kg cohort] was paused due to a reduction of his estimated glomerular filtration rate[.]"  In addition, PepGen "ha[d] received communication from Health Canada . . . request[ing] additional information from the Company to address Health Canada's safety concerns before any further dose escalation or enrollment of any additional participants at the current dose levels."  With respect to the CONNECT2 study, the same press release stated, in relevant part, that "[t]he Company is working with the FDA to address its questions regarding supportive data for the dosing levels planned for the patient population."

4

Following these disclosures, PepGen's stock price fell $0.40 per share, or 21.74%, to close at $1.44 per share on January 30, 2025.

On March 4, 2025, PepGen issued a press release "announc[ing] its voluntary decision to temporarily pause the [CONNECT2] study . . . until the Company can review results from the 10 mg/kg cohort in the ongoing [CONNECT1] study."

On this news, PepGen's stock price fell $0.53 per share, or 18.86%, to close at $2.28 per share on March 4, 2025.

Then, on May 28, 2025, PepGen issued a press release announcing that "PGNEDO51 did not achieve target dystrophin levels" in the CONNECT1 study and had chosen to discontinue development of its DMD programs.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Karam and other Class members have suffered significant losses and damages.

## ARGUMENT

### A.    KARAM SHOULD BE APPOINTED LEAD PLAINTIFF

Karam should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90

5

days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Karam satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Karam Is Willing to Serve as Class Representative

On June 9, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against PepGen and other defendants in the United States District Court for the Eastern District of New York ("E.D.N.Y."), styled *Karam v. PepGen Inc. et al.*, No. 1:25-cv-03221 (the "E.D.N.Y. Action"),[1] and advising investors in PepGen securities that they had until August 8, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Finestone Decl., Ex. B.

---

[1] On July 15, 2025, the Honorable Robert M. Levy of E.D.N.Y. entered an order transferring the E.D.N.Y. Action to this District, and on July 16, 2025, the E.D.N.Y. Action was transferred to this District. *See* Dkt. No. 9.

Karam has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Karam satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Karam Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Karam has the largest financial interest of any PepGen investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See Luongo v. Desktop Metal, Inc.*, No. 1:21-CV-12099-IT, 2022 WL 2532498, at *3-5 (D. Mass. July 7, 2022) (finding "many courts have considered" the *Lax* factors to assess a lead plaintiff movant's financial interest under the PSLRA and applying those factors); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64-66 (D. Mass. 2019) (same); *Arkansas Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (same). Of the *Lax* factors, courts in this District tend to emphasize approximate

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Luongo*, 2022 WL 2532498, at \*3 ("Among the[] four [*Lax*] factors, courts have considered the approximate losses suffered to be the most important in determining the largest financial interest."); *Alnylam*, 378 F. Supp. 3d at 64 (same); *Insulet*, 177 F. Supp. 3d at 622 (same).

During the Class Period, Karam: (1) purchased 4,000 shares of PepGen common stock; (2) expended $15,600 on these purchases; (3) retained 4,000 of his shares of PepGen common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $9,135 in connection with his Class Period transactions in PepGen securities. *See* Finestone Decl., Ex. A. To the extent that Karam possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Karam Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.

*Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).  Moreover, "[i]n deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff." *Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 52 F. Supp. 3d 337, 341 (D. Mass. 2014) (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y.2009)); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's "claims appear to be typical of the putative class's claims, in that they arise from the same course of events and involve the same legal theory as to the claims of the rest of the class." *Vertex*, 52 F. Supp. 3d at 341 (citing *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001)); *see also Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

Karam's claims are typical of those of the Class.  Karam alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning PepGen, or by omitting to state material facts necessary to make the statements they did make not misleading.  Karam, like other Class members, purchased PepGen securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was

9

damaged upon the disclosures of those misrepresentations and/or omissions that drove PepGen's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), "possesses 'common interests and an absence of conflict with the class members[,] and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation," *Vertex*, 52 F. Supp. 3d at 341 (alteration in original) (quoting *Lernout*, 138 F. Supp. 2d at 46); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))). The class representative must also have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986).

Karam is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz, Karam has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Karam's interests and those of the Class. Moreover, Karam has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Finestone Decl., Ex. C), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

10

Further demonstrating his adequacy, Karam has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Finestone Decl., Ex. D.

### 4. Karam Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Karam's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interest of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Karam's ability and desire to fairly and adequately represent the Class has been discussed above. Karam is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Karam should be appointed Lead Plaintiff for the Class.

### B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Vertex*, 52 F. Supp. 3d at 341. The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to

11

counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Karam has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Finestone Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Karam's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus,

the Court may be assured that by approving Karam's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Karam respectfully requests that the Court issue an Order: (1) appointing Karam as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  August 8, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Emily C. Finestone*
Emily C. Finestone (BBO # 693684)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Plaintiff Johnny Karam and*
*Proposed Lead Counsel for the Class*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on August 8, 2025.

*/s/ Emily C. Finestone*
Emily C. Finestone (BBO # 693684)